Hunter *vs.* Stembridge.

No. 32.—GEORGE R. HUNTER administrator, &c. plaintiff in error, *vs.* JOHN STEMBRIDGE, trustee, defendant.

[1.] Where a testator by his will devised to his son Henry the plantation whereon he lived in fee, and after bequeathing a negro woman to his wife, during her life, used the following words, " and I also *allow* my son Henry *to give her a support off my plantation during her lifetime:*" *Held*, that the testator used the word "allow" as expressive of his *intention* that his son Henry should support his wife during her life, off the plantation, and that Henry took the same under the will, subject to that charge, which a Court of Equity will enforce.

[2.] When the words of a will are those of recommendation, or precatory, or expressing hope, or that the testator has no doubt, &c.—if the objects in regard to whom such terms are used are certain, and the subjects of property to be given are also certain, the words are considered imperative, and create a trust.

In Equity, in Crawford Superior Court. Decided by Judge POWERS. March Term, 1852.

John Stembridge filed his bill in Crawford Superior Court, setting forth that Thomas Stembridge, late of said County, had died, leaving a will, the first item of which was in these words : "I will and bequeath to my wife Sarah Stembridge, a negro woman named Mary, during her life, and then to return to my estate, and I also allow my son Henry to give her a support of the plantation during her lifetime."

And, by the 3d item, he bequeathed the plantation on which he lived to his son Henry. This will was made in 1837, and the testator died the same year. Subsequently, Henry Stembridge died, and George R. Hunter, as administrator of his estate, sold the plantation in fee simple, free from the incumbrance of the claim of Sarah Stembridge for support.

John Stembridge, the complainant, had been appointed trustee for his mother, Sarah Stembridge, and filed this bill to arrest in the hands of the administrator, the note taken for a part of the purchase money of the land, and to require the purchaser to pay

the same into the hands of a trustee, to be applied to the support of the said Sarah Stembridge.

On hearing this bill, and the answer to it, the Court granted the order, modifying it so far as to permit the purchaser to pay the money to the administrator, to be held by him for the purpose of furnishing a support for the widow, as prayed for in the bill.

To this ruling of the Court the defendant excepted.

HUNTER, for plaintiff in error.

COOK & MONTFORD, HALL & HALL, STUBBS & HILL, for defendant.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The main question invoked in this case is, whether by the will of Thomas Stembridge, a trust was created for the support of the testator's wife on the plantation devised to his son Henry R. M. Stembridge? By the 1st clause of his will, the testator "bequeathed to his wife, Sarah Stembridge, a negro woman named Mary, during her life, and then to return to the estate: and I also *allow my son Henry to give her a support off the plantation during her life time.*"

By the 3d clause of his will, the testator devised his plantation in fee to his son Henry, and appointed him his executor. Henry Stembridge is dead, and George R. Hunter administered on his estate, sold the plantation under an order of the Court of Ordinary, and now has in his hands a portion of the purchase money arising from the sale thereof. This bill is filed by the appointed trustee of Mrs. Stembridge, who is an aged and infirm old lady, for the purpose of asserting her right to have the fund now in the hands of the administrator arising from the sale of the plantation, appropriated to her support, or so much thereof as shall be necessary for that purpose. Did Henry Stembridge take the plantation under the will, charged with the support of his mother during her life? It is to be remarked,

that the testator gave to his son Henry his plantation *over and above* what he gave to his other children, on which he and his wife then lived, and appointed him his executor.  The testator devises his plantation on which he was then living to his son Henry, and after giving to his wife a negro woman during her life, he declares, "and I also *allow* my son Henry to give her a support off the plantation during her lifetime."  The intention of the testator is to be elicited from the whole will, taken together. Every word is to have its effect, if it possibly can: and every word is to be taken according to its *natural* and *common import.* Now, if the testator had said, "and I also *intend* my son Henry to give my wife a support off the plantation during her lifetime," there could have been no doubt in regard to his meaning: but it is contended, that the testator having used the word *"allow,"* that it implies a *mere discretion* on the part of Henry, to support his mother off the plantation or not, as he might elect.  That the testator was an illiterate, unlearned man, is shown by the fact of his making his mark, when he executed his will, and it is not at all uncommon for that class of persons to use the word *"allow"* as synonymous with that of intention.  I *allow* to go to town to-morrow, or I *allow* for my wife to have a support off my plantation when I die, &c.  The testator used the word *allow* in this clause of his will as expressive of his *intention* that his son Henry, to whom he had given his homestead, should support his mother off the same during her life; and in our judgment, he took the plantation under the will, subject to that charge, and that the trust attaches on the fund now in the hands of the administrator arising from the sale of that plantation, or so much thereof, as shall be necessary for her comfortable support; the complainant having elected by his bill to go upon *the fund,* instead of *the land* now in possession of the purchaser at the administrator's sale.

[2.] *In Paul vs. Compton* (8 *Vesey,* 380,) Lord Eldon considered the rule settled, that when the words of the will are those of recommendation, or precatory, or expressing hope, or that the testator has no doubt, &c.—if the *objects* in regard to whom such terms are used are *certain,* and the *subjects of*

*property* to be given, are also *certain*, the words are considered *imparative*, and create a *trust*. Here *the object* whom the testator "*allowed*" his son Henry to support during her lifetime is *certain*, and *the property* off which she was to be supported is equally *certain*. Let the judgment of the Court below be affirmed.